Zach Shaw for Petitioners Pacific Gas & Electric, Southern California Edison, and San Diego Gas & Electric. I'd like to try to reserve four minutes for rebuttal. FERC denied my client, an adder, for participating in a regional transmission organization. It thought federal law required it to do so because of a 2022 California statute, AB 209, that it believed forced us to participate in California's regional transmission organization, which is called CAISO. Those orders should be reversed for three reasons. FERC got California law wrong. If California law is read FERC's way, it'd be preempted. And FERC misread the federal adder statute too. I'd like to start with the state statute, which is the narrow way we think to resolve this case. So FERC, on rehearing, misread that statute to say that we cannot leave CAISO no matter what. But in fact we can leave with the CPUC's approval, as FERC correctly recognized in its initial order, and the CPUC itself has also acknowledged. And if the state statute is read correctly, our participation in CAISO is voluntary in the relevant sense. So you're parsing that pretty closely, that you need approval to leave. The utility has to have approval to leave. But it would be voluntary in your view if they don't ask for that authority and they just choose to stay? Sure. So I think our view is, and let me just separate out, there's a state law question about what standard applies if we want to leave. Does the California statute just flatly prohibit it, or does it allow us to ask for and seek approval from the CPUC to leave? And then there's a Federal law question of, you know, however you read state law, is our participation voluntary as a matter of Federal law? And our submission is that the right way to read the state law is that we can seek permission to withdraw, and that the Federal law consequence is that our participation is voluntary in the relevant sense. So reading the state law, we don't have a California Supreme Court case, so we're sort of in eerie territory, right? So it's not eerie. I mean, this Court's decision in CPUC 2 rejected the application of eerie here. It's true we don't have a California Supreme Court decision, but we think the state statute here is really quite clear for four reasons. First, the legislature enacted AB 209 on the heels of this Court's decision in CPUC 2, and it did so to ratify, we think, the CPUC's unsuccessful position there, which was that we needed their approval to leave. That was their position in that case. Second, the legislature embedded that aim in the text. It did not provide in what's now 362C that we shall participate in CAISO full stop. It said that we shall participate consistent with Section 851. That is the provision that allows the CPUC to approve applications for changes of control. But just so I understand this, from the time you joined CAISO in 1997 until the time FERC adopted Order 679, did you receive any, quote, unquote, incentive for participating in CAISO? So I think we received this adder that was created under Section 219C for the first time. It's a filing that we made, and I believe it's 2007. And we continued to get it until, you know, the order in this case, including through CPUC 1 and CPUC 2. So that's sort of the state of the world. And just to go back to how I think the right way to read the statute is, we would also point you to the Statement of Findings and Purpose. And, you know, this is on page 8 of the addendum to our brief. Three times there, the legislature reaffirmed the view that we can leave with permission. It did so in Section 1A1, where it said it was enacting the statute based on the view that changes of operational control, which is, you know, what occurs if you were to leave CAISO, are prohibited without the CPUC's approval. That is our view of the statute. Section 1A2 says that the point of this amendment was to not make a change in, but rather was declaratory of existing law set forth in particular CPUC decisions. It's called the 1998 transfer decision. You'll find it in the prior cases. And what that decision says, and this is at page A15 of the addendum to our brief, is that if we want to leave CAISO, this is what the CPUC said, we need to seek their approval. The interpretation of California law that FERC adopted below would take what the legislature said was not a change and then make it a change. Now we get to the part of this preamble that's the only thing FERC relied on, this statement that we were not a voluntary participant in CAISO. And that, we submit, doesn't help FERC because, as I said at the beginning, voluntariness is a question of federal law where, you know, candidly, the sort of intent of the California legislature is not probative. What is very probative is the California legislature's intent of the substantive effect under state law that it expected this statute to have, which we think clearly was that we could seek approval to withdraw. Let me ask you a question. If whether participation is considered voluntary is a federal question, is that something that FERC should decide in the first instance? So I think if you agreed with us on the state law question, it would certainly be open to you to remand it to FERC. Because that's what they did in CPUC 1, right? They remanded it for that question. They did remand it. But I guess what I would say about CPUC 1 is you remanded, but with quite a lot of discussion about the right way to think about voluntariness. And I guess what I would say is we think the voluntariness question under federal law is quite clear, if you agree with our reading of state law, namely that just needing to seek approval to withdraw cannot possibly render our participation not voluntary. And that's for four reasons. One, we are a regulated utility. Almost everything we do requires approval from a state regulator, a federal regulator, or both. And so it just makes no sense to say that, like, when we raise rates, for example, we are not acting voluntarily just because we need to seek approval to have those rates. Second, I think a really sort of killer demonstration of this comes from Section 202A of the Federal Power Act. This is 824A sub A, which we talk about in connection with our preemption argument. But what it says is that FERC has to keep membership of these RTOs voluntary. We think it also prevents states from regulating this area, but, like, bracket that for now. Everybody agrees that FERC cannot make RTO membership involuntary. But FERC, for decades and decades, has reviewed requests to withdraw from RTOs under Section 205 of the Federal Power Act. So, you know, it's- But let me ask you, it seems clear here that CPUC, even if they had the authority to allow you to withdraw, has no intention of ever allowing you to withdraw. So why does it matter that they had a hypothetical or theoretical power to allow you to withdraw here? It's never going to happen, right? Well, so I guess two points. One, like, there's a statutory standard that governs withdrawal. It is a public interest standard where it asks, the CPUC asks, you know, is the action at issue not adverse to the public interest? If we disagree, we can seek judicial review. And, you know, in terms of how to sort of do the analysis, I'd submit you can't do it the way Your Honor just suggested, because, again, we have many decades of utilities getting this adder, even though FERC has to approve requests to withdraw from RTOs. So how much is this adder worth? I don't think it's in the record, and it's a little complicated because we've got three different companies. A lot, though, right? It's a significant amount of money. And the reason why is that Congress understood that it was very important to incentivize investment in transmission, and then when you have more investment in transmission, it actually lowers rates for customers because it eliminates something called congestion, which is basically if you can't get electricity. They keep saying that, but I've never gotten a lower rate. Well, so I think this is a tricky thing, right, because you don't see the but-for world of what if there weren't investment in transmission. Okay, that's the good news when I open my PG&E bill? The investment in transmission really does redound to the benefit of customers, but just to go back to the voluntariness point, because this is, I think, super important. When FERC has reviewed under a just and reasonable standard. But isn't your argument sort of, you know, your argument seems to be if I join it once, then I'm entitled to get this adder. But then there's no incentive for you to actually spend that money on investment, right, versus just paying your shareholders bigger dividends. So then you wouldn't be actually achieving the purpose of this statute, right? I want to make sure to keep sort of our different arguments separate. You know, that is a point that we talk about in connection with our third argument, which is that even if you disagree with everything we were just saying about us being able to leave KISO with the CPUC's permission, then we are nonetheless entitled to the adder under Section 219C, because the statute just doesn't permit that type of voluntariness requirement. And, you know, I want to get to that, but I also want to keep on what, you know, our lead argument has been. That argument would eliminate any incentive to actually lower Judge Callahan's electricity rate, because you could just give that to your shareholders. So two points. One, to answer directly, there is an incentive for us to invest in transmission, because what the adder does is it encourages us to allocate scarce capital to transmission instead of other uses. So if we have $100 and our normal rate of return is 10 percent, then the adder means we get $10.50 on every $100 we invest. And so we are more likely to invest that money in transmission as opposed to distribution or dividends or what have you. But I want to take you back to our first argument, which is that our view of California law is that we can leave with the CPUC's approval. And so the adder is inducing something very concrete with respect to RTO membership, which is for us to not seek permission to leave the RTO. You know, that is a voluntary thing that the adder is inducing, and it's actually the only thing that guarantees that we will not leave the RTO and, you know, so furthers Congress's intent in incentivizing RTO membership, because, again, if we apply to leave we can never leave. I'm sorry, go ahead. No, go ahead. Well, if I understand your position correctly, you believe that Congress wanted utilities to voluntarily join NISO, right? If that's right, how do you reconcile this view with 18 CFR section 35.34, which requires utilities to file a proposal to participate in NISO? So I think it is quite clear that RTO membership is voluntary. FERC said this in Order 2000, and this is cited in our briefs, which is very expressed. Like, we have to make this voluntary, and the reason is this section 202 of the Federal Power Act. I'm happy to look at 34E, was that right, on rebuttal and come back. But I think it is nobody disputes that FERC's view, I mean, you can ask FERC about this, is that RTO membership has to be voluntary as a matter of Federal law. And I do just want to go back to your question, Judge Koh, about how this relates to sort of how you think about the question, and, you know, whether it matters whether the CPUC sitting here right now, like, would like to allow us to leave. And, you know, one point on that is that is never how the inquiry has worked vis-a-vis FERC's own ability to decide to approve requests to withdraw from RTOs. Like, if that were the rule, nobody would have ever gotten this adder for decades and decades because, you know, you would not know whether FERC would actually let you out when you requested it. And the other thing I would say is that is inconsistent with the burden of proof that this Court recognized in the CPUC 2 decision falls on the entity challenging the adder. So we are presumptively entitled as adder by virtue of being a member of an RTO unless the challenger comes in and shows that our membership isn't voluntary. And so we are sitting here. We have the ability to apply under our view of California law to leave. And when we have that ability, we submit, they simply cannot carry their burden to show that our membership isn't voluntary. So I guess... I guess you just said, well, we're automatically entitled to it if we join one of these, you know, regional transmission organizations. But, you know, FERC has the power to deny you that adder if it's not just unreasonable, right? I mean... It doesn't seem like there's any automatic here, right? They have a just and reasonable determination to make. They have a voluntariness determination to make. Judge Koh, I just want to make, be very clear about sort of where in our arguments we are again. If you... FERC rested the decision below on the theory that we cannot leave CAISO no matter what, because that's what the State statute says. If you disagree with that, we at minimum are entitled to a remand. And we think we are, the better move would be a remand with direction, given how clear it is that our participation is voluntary. So then we get to the question under section... But earlier you said it didn't have to be a remand. We could just decide the question. And now you're saying... I mean, look, I think, like, you could adopt our view. You could do the thing that CPUC1 did where, you know, what you did at bottom was say, FERC, you have not thought hard enough about this voluntariness issue, but, like, here's a lot of reasons that sort of point you one direction, at least as a matter of Order 679. We think you could do the same thing here. I mean, for all the reasons that I just said, I think it is crystal clear that if we can leave CAISO with permission, then our membership is voluntary in the relevant sense. And you don't have to reach any question about section 219C and, you know, whether it imposes a statutory voluntariness requirement if you agree with those propositions of State law and the voluntariness requirement that FERC has adopted as a matter of Federal law, because, you know, those prior grounds are sufficient to dispose of the case. But, you know, we do think, like, if push comes to shove, we would be entitled to an adder under the statute because, you know, the adder is continuing to incentivize us to invest in transmission facilities as opposed to other uses of our scarce capital in a way that Congress thought was important to benefit consumers. Do you concede that impossibility preemption doesn't apply here? I do not. Okay. Then why don't you explain how it's impermissible for you to comply with both California law and Federal law? So I think, first of all, I don't think impossibility is the only type of conflict. You can also have a direct conflict, an actual conflict. That's the better way, I think, to think about it here. I think that you can keep it an impossibility, and I don't think it matters, and it's because the California statute, if you read it to say we cannot leave no matter what, makes it impossible for FERC to do what FERC is charged with doing under Section 202a of the Federal Power Act, which is dividing the country into districts for voluntary interconnection and setting areas for those districts that embrace the locations that FERC thinks are, you know, best suited for interconnection. CAISO has a particular geographic footprint, and a command that we can't leave CAISO is also a command that we can't join it. If State law requires you to participate and Federal law allows you to participate, where is the impossibility to comply with those two? My point is that this type of RTO mandate, if you read it to say we cannot leave no matter what, conflicts with what FERC is charged with doing under Section 202a. So there's an impossibility for FERC. They cannot divide the country into districts for voluntary interconnection if, you know, California, because if California can do this, every other State can do so, too, and at that point, you no longer have the bottom line. But you disagree with the Sixth Circuit? We do disagree with the Sixth Circuit, Your Honor. I'm happy to explain why, but I'm also cognizant that I'm into my rebuttal time, so I can also sit down and we can talk about it later. Do any of my colleagues want to? Okay, we'll allow you to reserve for rebuttal. Thank you. Good morning. Good morning. I'm Carol Banta for the Federal Energy Regulatory Commission, and I will take 15 minutes, and then Ms. Ikeda for the California Public Utilities Commission will take five minutes. I do tend to refer to us as the commission instead of FERC, and I hope that doesn't cause too much. I'll try to say California Commission if I mean them, but if I'm just saying the commission, it's out of habit. I mean FERC. Okay. I want to pick up with a couple of questions from the topside argument. Oh, you didn't deal with, FERC didn't deal with preemption. That's right. We have not. Want us to, or? I think our position, and we took this in the Sixth Circuit at least at argument, is that you don't have to to resolve this case, but we're not arguing whether the court should or should not. The court certainly has the power to. But we. Well, is there a preemption issue here? What's your position? Well, the commission's position was that if the California law is preempted, this is not the, or whether or not it is preempted, this was not the appropriate procedural vehicle for FERC to deal with it, because FERC takes the state law as it is and looks at it and says, are you voluntary under that state law or not? Because the commission cannot invalidate a state law. But the parties could if they took that to a Federal court, or I think maybe even a State court, seeking a declaratory judgment. Well, if we said it was preempted, what does that do to your case? If you say it's preempted, then it would, I think it would be preempted. Or, like I said, this court can determine that. We just don't think we, the commission didn't think it was the appropriate procedural vehicle, and that's why the commission didn't decide it. But we're not presuming to tell a Federal court, certainly you have the power to do that. And we don't have a position that we've taken in these orders on the merits of that issue, which is why I've shared my time with the State regulator that does have a position on that.  Going back to a couple of earlier questions, Judge Callahan, you asked how much this is worth, how much the adder is worth. And I don't have a dollar figure for you, but I do want to make a point which was a key thing in the Sixth Circuit decision and certainly was discussed at argument, that, to be clear, if a utility gets this RTO adder, that goes to their return on equity for their past investments, for their rate base. It's not just for new investments, unlike an adder that you can get under a different incentive provided for in the statute, which the Sixth Circuit discussed under Section 219B. The commission created a number of incentives that any party, not just an RTO member, could get for new investments. But with these utilities ----  So help me understand the statutory scheme a bit. Are utilities like PG&E required to join an ISO under Federal law? Under Federal law, they are encouraged but not required. Well, the commission took the position in Order 2000 that it wasn't going to try to mandate it. And the commission actually discussed this in quite a bit in orders that we haven't really discussed. But the order that is the basis for that 18 CF 35.34 that counsel was just talking about, it was a rulemaking called Order 2000. And the commission in that rulemaking said, we're going to make this voluntary because we think we can get where we need to be. And the commission said in the rulemaking, if we tried to make it mandatory, and we're not saying whether we could or not, the litigation would be immense. And it's not worth it. We think we can get there. If they aren't required, it's not mandatory, how is California Utility Code 362C, which requires utilities to join the California ISO, how are they not in conflict? I can't argue the preemption issue because the commission has not addressed it in the  And I would just be post hoc guessing. I can't address the preemption issue.  I can only explain that the commission itself chose to take a voluntary approach because it believed that would work. And it has really gone with this carrot approach. And that is what Congress also did in Section 219C. Well, so doesn't 219 of the FPA contemplate incentivizing utilities to invest in ISOs? And if that's right, why couldn't the FPA incentivize such investment even if the utilities are required to participate in the ISO in the first place? Well, and that goes to the commission's interpretation of, let me get the statute, the commission has always looked at incentives as being something that has to induce. And this Court, when it looked at the Order 679 in the California 2018 case, this Court said, I think the exact language, I don't have the exact language in front of me, but it's, you can't induce something that isn't voluntary. And that is consistent with the way the commission had always approached incentives, going back to the 1992 policy statement that we discussed and that was the backdrop for all of this. The commission has always taken the position that an incentive isn't a reward for past conduct. It isn't a reward for the fact that you joined an RTO in 1997 or 1998. And that was the discussion in Order 679. There was a debate at the time of the rulemaking in 2006 whether this new incentive under Section 219C should only be available to utilities that newly joined an RTO because they didn't already belong to one. And there was a great debate about that because a lot of big utilities had already joined them before that. And the commission said, we are going to interpret the word joins to include remaining to disagree with the commission and say that CPUC does have the authority to authorize a withdrawal, then should we decide in the first instance whether the participation of PG&E is voluntary or not, or should we remand like in CPUC 1? I think it would be appropriate to remand because since the commission found, I know it had some language in the first order, but in the rehearing order, the commission found that the California statute didn't have any such provision. The commission didn't address that, and it hasn't been fully fleshed out, and the commission hasn't spoken to whether that would be voluntary. And all we have to go on — I mean, this Court could opine because California 2018 used the word unilaterally once, and California 2022 quoted the language from 2018 three times. But I don't think this Court or the commission have fleshed out what it would mean to be able to leave unilaterally in a withdrawal with approval situation. We just haven't had that out, and we don't have any more guidance than the one word from this Court in the 2018 case. So, I mean, this Court could speak to it, but I think it makes sense for the commission to take a first approach if the Court did conclude that that is what the law says. But we think that the best reading of the California statute, and I do want to get back to some of the Federal statute stuff, but we believe the best reading of section 362C in the California code is that you shall participate. And it doesn't say anything about withdrawal. In contrast to the different provision in 362D, right below it, I mean, the California assembly knew how to say this when they wanted to say it, that you shall not withdraw a facility from the operational control without commission, this is California commission, approval. And there's no such language about you shall not withdraw without commission approval in C. So we think that this is the best reading of that and that you don't need to either decide about voluntary requesting withdrawal or remand it to us to do that. But if I could get back to a couple of things I wanted to say. I was wanting to point the Court in particular to section 11 or page 1126 in the Sixth Circuit Dayton decision. They actually discussed Petitioner's theory about the incentive. Can you address, it seems like the utility in 362C is making a big deal about the language consistent with section 851 and the commission's regulation of transfers of operational control of electrical corporation facilities and it goes on. Why don't you comment on, you know, what would be the purpose of all this language if CPUC could never authorize a withdrawal? Well, I'm looking at, in the excerpts of record, page 20, this is the rehearing order at paragraph 37 is where the commission addressed this in its order. It says that given the clear directive that you shall participate, the commission concluded that the reference to section 851 and the original transfer of these utilities into the ISO. Can you repeat that paragraph number? I'm sorry, I didn't catch it. It's 37. Okay. It starts on ER 19 and I'm reading the portion that's on ER 20 and it's the last sentence of the paragraph given the clear directive. And the commission said the reference to section 851 and the regulation of transfers of operational control in that section. Okay. It must not be, I'm sorry, maybe I'm looking at the wrong document. ER 49 is paragraph 37. Oh, no, no. There are two orders. I see. And the rehearing order is first. It's not in chronological order. It's ER 20 is the rehearing order.  Go ahead, please. If I'm not mistaken. Yes. And, yeah, so the commission said that that language is better read and we're not claiming that it's, that the California assembly was completely clear on this initial clause, but the better reading, because we don't get, we know we don't get deference on reading state law, but the commission concluded that the better reading was a recognition that the California commission had first claimed authority to authorize the PG&E's participation in the ISO under section 851. Now, this Court in California 2022 very much changed the understanding of the California commission's authority under section 851. That's what parts of this. But why would the California legislature acknowledge that in the statutory text if it didn't have any substantive effect? Well, I think what they're saying is these three, the largest, the three investor owned utilities, because there are many other ISO members. I think they're largely municipally owned. I don't know the exact makeup, but these three utilities are often referred to as the IOUs, the investor owned utilities. The reason they're in the ISO to begin with is because of this. So the commission saw this as basically the historical context of how we got here. You're in the ISO. You're in the ISO because this all happened a long time ago. And then the operative part is the latter part of the sentence that says, you know, you being in here because you already joined years ago, you shall participate. And this is providing the mandatory language that this Court, well, that it clearly didn't exist in anybody's argument before this. The whole dispute in California 2022 lacked any of this kind of language. So this is the California Assembly saying, we're going to say directly that you shall participate and your participation is mandatory. And it did some other cleanup things because there was a lot of analysis in California 2022 about the state of the California law, especially under 851. So that's why 362D, which is, it's about withdrawing specific facilities. Well, the Assembly, that has nothing to do with our case, but the Assembly added that because it was some of the fallout from the California 2022 decision. I don't want to get too confusing, but I do want to correct one point that Petitioner's counsel was claiming that the commission has to approve anybody's withdrawal from an ISO. That's not quite right. They do have to approve the terms of it. But the case that this Court relied on in California 2022 in interpreting Section 851 is a case called Atlantic City from the D.C. Circuit. And the Atlantic City case said specifically that FERC, the Federal Commission, does not have that kind of authority under its analog, which is Federal Power Act Section 203. So the reason this Court was relying on Atlantic City to interpret California law is because the D.C. Circuit had already said that FERC did not have that kind of approval authority. Can we go back to, sorry, my first question. Why would we have to remand a FERC? Do you have subject matter expertise that would be relevant to the voluntariness question, or why? What would be the reasons? I think, yes, because the commission does decide the cases about incentives under its regulation that were issued under the Federal Power Act, which charges the commission with creating this incentive and with regulating rates. So whether or not someone gets an RTO adder under federal law, I mean, it is something that we have the expertise in, how these RTOs and ISOs operate. So we do think it would be appropriate if this Court decides that our interpretation of the State law was incorrect. I think, so another point. Well, if we say it's involuntary, then why do we have to remand that to you to get the stamp of approval that it's involuntary? Oh, I thought, I may have misunderstood. I thought the question was about whether not being able to withdraw without approval under State law is voluntary for purposes of the Federal incentive. That would still be an open question, whether they're voluntary or involuntary. I may be confusing Your Honor's question. If you decide that, if this Court decides that withdrawing with hypothetical approval or the hypothetical ability to withdraw with approval is, it seems, I guess the Court could decide it, but it is the kind of thing that the commission ordinarily would be asked to address in the first instance. Well, what can we decide here? Well, like, well, much like the Sixth Circuit case where the Ohio law wasn't even challenged there, there are the arguments about whether the commission's regulation properly interprets FPA Section 219, and there is the question of preemption, which I have to leave to the intervener to argue. But if these are purely statutory textual interpretation questions, why can't we do that? Well, I don't think the question of whether withdrawal is voluntary, if you have to ask for it, is resolved by any statute. That's a question of what it means to be voluntarily participating under the commission's regulations and the Federal Power Act provision in Section 219 that was interpreted in that regulation. So I don't think that's straightforwardly answered the way some of the other questions might be. I don't know if that's helpful, but I think that's still a question of what it means to participate voluntarily, and this Court has sent that back to the commission to consider before. Although it did give a lot of guidance in the California 2018 decision, which the commission took very seriously and has followed. Right, but if it's a purely legal question, FERC doesn't have more legal expertise necessarily than the judiciary, correct? If it's a purely legal question? If it's purely legal, then no. We don't have more legal expertise. But we have a lot of expertise with regional transmission organizations and how they operate and implementing the Federal Power Act. All right, any additional questions? No, thank you. All right, we'll hear then from Ms. Sycada. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Tiffany Ikeda, Counsel for the California Public Utilities Commission for the people of the State of California, speaking on behalf of interveners. With respect to preemption, in this case, FERC reasonably declined to address PG&E's late preemption argument to the challenged orders. Does your commission have the authority to approve PG&E's withdrawal from an ISO? The California Public Utilities Commission must enforce the California Public Utilities Code, and under the statute, under Section 362C, the petitioners shall participate in As I was mentioning, PG&E did not raise or even mention the issue of preemption in its original filing, despite its awareness of both the California law and the pending Sixth Circuit litigation. PG&E first presented arguments about preemption of the California law only on rehearing, at which point the parties were not able to respond, which raises issues of due process and fairness. Can we go back to 362? So you're saying 362D, that just talks about withdrawing a facility and not entire, you know, utility company in participation in a CAISO. So you don't think that gives you the authority to approve a withdrawal? And what about all the prefatory language in 362C? I guess I just want to understand, what is your best argument, that you don't have authority to grant a utility permission to withdraw from a CAISO? So the language of Section 362C, the operative language is that they shall participate. These three companies that are subject to the 1998 order, that is the language that is currently in the law, that they shall participate. There is no contemplation in the statutory language about withdrawal. The CPUC can conduct 851 hearings and consider the reliability of the State's electric supply under Section 362C, but a complete withdrawal is not permitted under Section 362C. However, the Commission can approve withdrawals of specific facilities if they're in the public interest. So are you saying 851 just applies to withdrawing specific facilities and not an entire utility? 851 is a broad statute about the disposition of property that's used and useful in providing electricity to the public. It's not specifically only about transfers of operational control, but it does pertain to transfers of operational control. So if California Utility Code 360C says it's mandatory, and I think your friend on the same side said that PG&E isn't required to join an ISO under Federal law, why isn't there a conflict? Yes, Your Honor. Under Section 219 of the Federal Power Act, which is the one we're discussing, FERC is to encourage the voluntary participation and coordination in RTOs. The California law... Well, it's incentivizing utilities to invest in ISOs, right? Is that what they're doing in 219? Yes, Your Honor. Okay. And Section 219 does not put any obligation on Petitioners, so it is perfectly possible for FERC to encourage the voluntary coordination and for PG&E to comply with California law, which mandates its participation. There is no impossibility here under the two statutes. But you have a higher bar in California. Yes, Your Honor. And courts have held that the states may set higher standards than are required under Federal law, but that doesn't mean that the California law is preempted. And are you referring to Dayton Power, or what authority are you referring to in that statement? The Sixth Circuit in Dayton Power found that there was no conflict preemption. And additionally, the Sixth Circuit found that far from being an obstacle, and consistent with the Sixth Circuit's opinion, far from being an obstacle to Congress' purposes and objectives in 219, the California law here furthers Congress' goals of increasing transmission organization membership. So this, the way that the feds have broken things up, I think California, this goes a little into Nevada, too. It's not just California, right? I looked at a map. The CAISO does operate facilities.   It does serve. And doesn't the Sixth Circuit case talk about interstate versus interstate? And aren't we in an interstate situation if it goes California and Nevada? We are talking about interstate facilities. However, petitioners concede there is room for the states to act regarding regulation in existing interstate transmission facilities. In their brief, they recognize that California has the authority to approve modifications to existing interstate transmission facilities. And they must seek CPUC approval before doing so. So this is sufficient to defeat petitioners' preemption, field preemption claim. And it indicates that their true argument is one of conflict preemption. All right. Do either of my colleagues have any additional questions of Ms. Siqueira? No, thank you. All right. Your time's expired. Thank you.  All right. We'll go back to rebuttal. Thank you, Your Honor. Judge Callahan, the answer I promised you is on Section 3435. Okay. It just provides the requirements if you are going to apply to withdraw. And I think you heard FERC counsel say they view RTO membership as voluntary under Federal law and that they do not and have not asserted authority to require it. You also asked what you could decide in this case. You can definitely decide that FERC's interpretation of State law was wrong here. On the text, I never heard a satisfying answer to the part of 362C that says, shall participate consistent with Section 851. FERC's view is not consistent with Section 851 because it withholds authority that Section 851 grants the CPUC to allow requests to withdraw. It would, in fact, read that provision out of the statute and turn it into a nullity, which is exactly what we are not supposed to do with statutes. And the explanation we heard from FERC's counsel doesn't make sense on its own terms. That was something like, you know, this was just sort of a gesture back to the way we got here. First, like, this is in the text, not in the preamble. But also, if you're going to look at how we got here, look at page A15 of the addendum to our brief, which is the decision that says, you know, you can join CAISO, but if you want to withdraw, you need our permission. So you'd bring sort of that whole package in, we think. The CPUC does not get deference on the interpretation of this California State law. And I would just note that the view you heard from the podium is exactly the opposite of the view that the CPUC expressed in its filing in connection with the San Diego Gas and Electric Company's petition. This is cited at page 37 of our brief. And if you just sort of marinate in that filing, they wholeheartedly embrace the idea that our membership is involuntary because they need to approve a request to withdraw. It's all over that filing. Judge Koh, you asked about Section 362d. I think that strongly supports our view. In our view of the world, these sections work together in harmony. Section 362c is about the three utilities that were directly at issue in the CPUC2 case, says we need permission to withdraw. And 362d says everybody else too, and any individual facility, you need permission to withdraw. The other side's view, the way they think the world works, is that anybody else can withdraw from CAISO entirely, and we, under Section 362d, and this is important, can withdraw every one of our facilities, in which case, by the way, our membership would not be involuntary under any definition. Or maybe we can't withdraw, like, our very last facility because you would read somehow 362c as, like, an implied limit, because if we withdrew the very last facility, we would no longer be, like, a transmission owner in CAISO. And two points on that. One, there's nothing in the text to support it. And two, if you read the legislation that way, we submit it would run straight into our preemption argument, because the only reason to draw the statute that way would be to basically rejigger our Federal rate and deny us the incentives that California said we should receive. If there's no further questions.  Let me make sure I do it. No, thank you. My colleagues do not appear to have any additional questions. This matter will stand submitted. Thank you both for your argument in this matter. And we'll be in recess until tomorrow at 9 a.m. Thank you.
judges: CALLAHAN, BADE, KOH